Docket 19-3088. Counsel. Good morning. Thank you. And I'd like to reserve three minutes and I'll try to monitor that on my own. Good morning, Judge Phillips, and may it please the Court. Sheriff Gay has before this Court to ask that it reverse the district court's improper denial of 11th Amendment immunity to him. I have two basic points to make. The first is that this Court has already dismissed the 11th Amendment. It decided the issue in the Hunter decision, recognizing that a Kansas sheriff is an arm of the state, and the district court erred in failing to follow that. It's an unpublished decision, correct? It is an unpublished decision, followed up shortly thereafter by a similar published decision in the Nelander decision. My second point is, even if this Court were riding on a blank slate, application of the Mount Healthy factors in the arm of the state doctrine that this Court has applied for decades confirms that a Kansas sheriff under Kansas law is an arm of the state. Unless the Court would like to go a different direction, I'd like to first start with the Hunter decision and then proceed through Nelander and then McMillan County. So first, with regard to the Hunter decision, in Kansas there was an excessive force claim brought against a sheriff in his official capacity. The district court found that the 11th Amendment immunity was appropriate. That issue was appealed to this Court. This Court was faced with an argument not that the 11th Amendment didn't apply, but rather that a Kansas statute had created a waiver of the 11th Amendment immunity. This Court, in an unpublished decision, as Your Honor recognized, rejected the waiver argument and affirmed the district court's judgment, finding 11th Amendment immunity was appropriate. The court didn't analyze whether sheriffs were in fact entitled to immunity as state actors, because that was not the challenge that Mr. Hunter brought. So it wasn't a state actor. It was whether or not they were entitled to 11th Amendment immunity. A different inquiry. In Hunter, it was specifically 11th Amendment immunity. And this Court affirmed the judgment below. Two years later, in the Nelander decision, there was a Kansas County attorney in which 11th Amendment immunity on an official capacity claim was passed. And this Court, in a published decision consistent with Hunter, found that 11th Amendment immunity was appropriate. With respect to this county attorney? Right. As we pointed out in our brief, all of the relevant predicates of a county attorney and a district court judge and a county sheriff are exactly the same under the state law. It's how they treat them. They're kind of like a three-legged stool of the justice system. And so they each have geographic limitations. They each have funding that comes from the county. And they're each created by the Kansas Constitution, and their duties and obligations are derived and executed by and through state authority without regard to any local control over it. And that's similar to the McMillian decision that the U.S. Supreme Court had in 1997. Kansas law is quite similar to Alabama law in that case. All of the factors that are relevant to the Mount Healthy analysis are exactly the same. The sheriff in Alabama, much like in Kansas, derives its power from the Kansas Constitution. Its duties are subject to Kansas state law. The funding is actually directed by the legislature in both Alabama and Kansas to come from the local effort. And the obligation of the sheriff in both Alabama and Kansas is to enforce the law that the legislature has created. It's important to realize that even without those cases, that Kansas law would suggest that this is an arm of the state. Let's check off the factors, the four factors under Mount Healthy. The first factor, the characters described to the entity under state law, isn't the sheriff in a specific statute for counties, county offices, and that contains the office of sheriff? I do not believe that the statute ever describes the sheriff as a county office. Rather, what they're described as is as a sheriff. And as this court recognized in Sutton, the name or label given to a particular entity doesn't matter. The Kansas Supreme Court specifically said that the sheriff is a state officer. And so that's what's applicable. I think there's some confusion in the briefs. There's some confusion as to whether or not the Kansas Supreme Court really said that, too. Well, I don't believe there is any confusion with regard to that because if you look at the Nylander state court decision, it states the law. I think the district court said, well, we think that the Kansas Supreme Court erred in not identifying that this was an argument of counsel. But if you read the Nylander decision, at multiple points in that Nylander state court decision, it says counsel argues or amici argues. So the Kansas Supreme Court was well aware of how to describe an argument and apply state law. Can you make up a quote out of the brief establishing each of the parties' positions? Well, I think it's consistent with judicial power to take a correct statement of law, whether it comes from the parties' brief or a prior case. And if you look at the holding of the state court Nylander decision, it reverses the judgment of the district court, which would be consistent with respondents' position in this case. It actually said that the county commission has no power to direct the hiring and firing of the officer and no power to direct and control the budget obligation. Rather, that power comes from the state of Kansas. In other words, the county sheriff is immune from local control and is subject to the state control. And we believe that those are the important things. Counsel, could I just ask you a question about the state Nylander case? Didn't that case concern the sheriff's personnel and purchasing functions? Wasn't the case about the sheriff's law enforcement? It did, Your Honor, and I think that actually strengthens our point because under Kansas law, there is a difference of opinion as to whether or not the power to hire and fire is a power held by the sheriff or by the county. In that case, there was, for lack of a better word, a statutory tug-of-war as to whether or not that power resided within the county commission or with the sheriff. And the Kansas Supreme Court, as you know, unequivocally said that power lies solely with the sheriff. Here, in contrast, the power to create law enforcement power is exclusively within the sole dominion and control of the county sheriff. And there is no law that would suggest that the county commission has any ability to direct or control the law enforcement objectives or prerogatives of the county sheriff. You would agree, though, that the particular function being performed by the sheriff is the relevant consideration. It's possible for the sheriff to be an arm of the state for some purposes and not for other purposes. Would you agree with that? I would agree with that. And I think that in some of the circuit courts across the country, particular states' laws say that a sheriff is not an arm of the state. But when the particular action at issue was acting pursuant to state law, I think it was the Sixth or the Seventh Circuit, it's mentioned in my brief, recognized that that sheriff, though typically a county officer, was acting as an arm of the state. And so in this case, I think that's relevant because what the sheriff was doing was enacting the law enforcement functions that is in Chapter 19, Article 8, which derives exclusively from the Kansas legislature. And so I think it's possible under Kansas law that a county sheriff could be engaging in non-state action type of behavior. I'm trying to give the court an example, maybe delivering, I don't know, something that the county commission has asked to do, asked the sheriff to do, and the sheriff voluntarily does it. I think that's possible. It's just far afield from what we have here because what we have here is the county sheriff executing the law enforcement prerogative that exclusively comes from the Kansas legislature, and the county commission has no power to direct or control those prerogatives. So that's a long-winded answer to your question. I'm sorry. In the other Nylander case involving the county attorney, why should the sheriff be equated to the county attorney for purposes of the issue here? I mean, after all, the county attorney appears in court, at least in criminal cases, on behalf of the state. But why would that carry over to the sheriff? Well, I think for the same reasons that you have to do the same Mount Healthy type analysis and look how the county attorney is described by the state, the difference between a county sheriff and a county attorney, their power is derived from the same mechanisms. They are equally immune from local control. I think as we pointed out in our reply brief, oddly enough, the county attorney, which still has the name county in its label, is directed by the state legislature to represent the county in court. So there are functions that the Kansas legislature has chosen to give to the county attorney, but it's clear that the county attorney exists in response solely to the direction and control of the Kansas legislature, much as a Kansas district court judge presides over their particular judicial district and a county sheriff presides over their particular county. But doesn't the county control the sheriff's budget? So much like in McMillian County, the county is directed to pay for the budget of the sheriff, but the county has no ability to restrict that budget. And in fact, as we pointed out in our brief, if the sheriff has insufficient funds to discharge the state obligation, it has a right to file a mandamus action, and that's an important function under Kansas law because a mandamus action is a judicial order to undertake a nondiscretionary duty. If, for example, the county commission could restrict or limit the types of powers that a sheriff would have, it would have an ability to function with the budget, but it doesn't. It has a duty from the legislature to fund the office that the legislature creates, to do the job that the legislature creates. It doesn't have an ability to say, hey, you want to do eight officers out on the street to enforce a particular law. We don't think that's appropriate. Rather, the sheriff gets to make that determination. So I think that's the answer, is that everything comes back to the Kansas legislature, and that's why this court was correct in Nylander with regard to a county attorney, and that's consistent with Hunter, and all of it's consistent with the Supreme Court's decision in McMillian. So I don't think there's any daylight between any of that type of behavior, and the funding mechanism and the geographic limitations and things like that were all discussed in Justice Rehnquist's decision in Monroe versus McMillian County. So I think that's why we rely so heavily on those things. Sorry, did that answer your question? Thank you. Okay. So I see that I have about three and a half minutes left. I'd be happy to answer any additional questions, but I'll be out for rebuttal. Thank you. Good morning. May it please the Court, my name is Dan Twetten. I represent the plaintiff and the appellee in this matter. I want to talk about the cases that appellant relies on to contend that this issue has already been decided, which, as we argue in our brief, is not the case. But before I dive into that, I want to, as a starting point, just remind the Court of what the purpose of the 11th Amendment is, is to protect the state treasury from being at risk in federal court. It's to protect the state from money damages. So in some ways, that begs the question here for this Court to follow the money, so to speak, which I think is a useful thing to keep in mind because here, in this case, any judgment against Sheriff Gay is going to be paid by the county out of county funds, and there's no suggestion otherwise. And that's quite different than the McMillian case where the Alabama Supreme Court had already decided that issue and concluded that any judgment against a sheriff or a sheriff's officer would be paid by the state. So with that as background, to talk about the cases that appellant principally relies on, starting with the Hunter case, as Judge Kelly notes, it's a non-precedential, unpublished decision in which the court did not actually engage in any of the factors to be applied, either later identified by the steadfast court or identified by the Mount Healthy Supreme Court case. And so it has very little persuasive value for that reason alone. Secondly, the issue that was actually very briefly addressed was only whether the state of Kansas had waived 11th Amendment immunity. The court in no way addressed the question of whether, in fact, the sheriff was entitled to 11th Amendment immunity in the first place. And there's no suggestion in the record in that case that the issue was extensively briefed or addressed. In fact, it was a pro se case that was filed and appealed. And so for all those reasons, Hunter is not of significant persuasive value here and it certainly is not binding on this court. With regard to the two Nylander cases, the Kansas Supreme Court Nylander decision and Nylander versus Lincoln County, it really doesn't address our issue at all. It's not concerned with 11th Amendment immunity. It's concerned with this, as counsel recognized, it's concerned with this sort of statutory fight over who gets to make hiring and firing decisions at the county level. Is it the county sheriff or is it the county board of commissioners? The court was not in any way trying to decide the issue that's present here, which is was the sheriff acting as an arm of the state in making employment decisions and in making purchasing decisions? It was a much different question that was actually presented. In addition to that, as Judge Kelly pointed out, there's this passage in the Nylander decision that the district court here questioned whether that was actually the court's holding or not. And so there's that potential issue with Nylander as well. But perhaps more importantly, Nylander, even if it were to be considered as addressing the issue of whether the sheriff was an arm of the state, is actually in harmony with the position that we advocate here. Because all Nylander held was that a sheriff and a county board of commissioners stand in equal footing to each other. They're equal to one another. They're co-equals operating within the county. And so the board of commissioners can't tell the county sheriff, here's who you have to hire and here's who you have to fire. Instead, both the board of commissioners and the sheriff have certain authority that was created by state statute. And all that Nylander was doing was parsing out who has the authority to make the particular decision at issue there. Here, we're not disputing the fact that the sheriff's office, the sheriff himself, was created as an act from the state legislature. But that alone doesn't answer the question as to whether the sheriff in this case, which involves law enforcement policy and practice, it's essentially a Monell claim, whether in this case the sheriff was acting as an arm of the state. And clearly, once you apply the steadfast factors, the sheriff was not. The other Nylander decision, the Republic County decision that this court, in which this court held that Kansas County attorneys were entitled to 11th Amendment immunity, also doesn't control our case here today for a couple reasons. One, that statement was clearly indicta. The court specifically says that it was not an issue that had been raised below, but goes out of its way to comment on application of the 11th Amendment to county attorneys. Second, the court did not apply either the steadfast factors or the Mount Healthy factors, whatever you want to call them. So there's no actual engagement in the question that's before the court here. And third, the statutory scheme in Kansas, as it relates to county attorneys, is significantly different than as it relates to sheriffs. County attorneys, the Kansas statutes, and here I'm talking about KSA 19703 and 702, they specifically refer to the county attorneys as acting on behalf of the state and on behalf of the people. The Kansas statutes that authorize a sheriff, and here I'm talking about KSA 813, there they specifically only talk about the sheriff keeping the peace in his county. There's no reference to the sheriff acting on behalf of the people or on behalf of the state in any manner whatsoever. So even if this court were to consider Nelander v. Republic County as having addressed the issue, the statutory scheme is very different in that case than in this case. And finally, with regard to the McMillian Supreme Court decision, the Alabama Constitution and at the time the Alabama Supreme Court cases that were in front of the Supreme Court were quite different than what we have here. The Alabama Constitution expressly says that a sheriff is an individual within the executive branch of the state. And also at the time, the Alabama Supreme Court had expressly held that any judgment against the sheriff would be paid by the state and not by the county. And so again, that case is not the same as we have here. Now, Your Honor, just to hit upon a couple of points that are bandied about in the briefs, the briefs go into quite a bit of detail about do the steadfast factors control, does Mount Healthy control. I think at the end of the day, the steadfast court set forth a very clear four-part test that should govern this court's analysis here. But it's all a little bit of a moot point because even in appellant's opening brief, they ultimately at page 23 say there are four factors and they refer to them as the Sturdivant factors. But we really end up at the same place talking about the same things. Secondly. Counselor? Yes. So I actually had a question about the steadfast. When steadfast was decided, did it change 10th Circuit law? No, Your Honor. It in no way changed 10th Circuit law. And do you see daylight between steadfast and Mount Healthy, or is steadfast something of a circuit decision gloss on that case? Yes. I think it is just the circuit court applying Mount Healthy and articulating ways to understand Mount Healthy for the district courts here in the 10th Circuit. I don't think that it's deviating from Mount Healthy in any way. Is it your position that the steadfast factors are exclusive, or could we consider other factors beyond the four listed in the case? I suppose in theory this court could consider other factors that were consistent with what the Supreme Court in Mount Healthy had identified as the kinds of things that control these decisions. But as we sit here today, those are the only four factors that this court has identified and that are in play right now. How does the follow the money 11th Amendment theory, how does that fit into these factors if at all? Well, I think very expressly steadfast, the third factor expressly says let's talk about how the agency is funded. And here the sheriff is funded by the Harvey County Board of County Commissioners. They have to pay for everything that the sheriff does. There's no state money involved. The checks on the paychecks that the deputies get, they don't say state of Kansas. They say county or Harvey County Sheriff's Office. The state in no way is funding the operations of Harvey County's law enforcement. And I think it also is illustrative, Your Honor, that any judgment in this case against Sheriff Gave would be paid out of county funds and not out of state funds. And there's no suggestion otherwise that the state would be responsible for any judgment in this case. So the state treasury is not at risk in any manner whatsoever here, which again is really at the heart of what the 11th Amendment is concerned about in the first place. Is there case authority on that, this theory? Pardon me? Do you have a case that speaks about the 11th Amendment in those terms that you're using now? I think the language of the 11th Amendment itself, which talks about states not being subject to claims for money damages, and federal court answers that question. Is it significant that the sheriff cannot issue bonds or levy taxes? I don't think so, Your Honor. Whether or not he's a state agency? Excuse me. I'm sorry to have spoken over you. I don't think it is significant because the question is really, does the sheriff get his money from a local source or from a state source? It's not whether the sheriff has some sort of independent taxing ability, because otherwise only an actor that has some sort of taxing authority would be outside of the arm of the state, which is not the case. And here the sheriff does in fact receive his funding from the county and not from the state. The state is not funding the sheriff in any manner whatsoever. I was going to previously refer to the question that arose in the briefs regarding which party has the burden on these issues, and it's our position that the burden on the application of the 11th Amendment clearly falls to the sheriff in this case. Every circuit court to have addressed that issue has so held, and there's no contrary appellate court authority on that point. The case that's cited in the reply brief by the defendant, it is only talking about a plaintiff that's trying to argue for abrogation and waiver of the 11th Amendment, and there this court held where a plaintiff is trying to say that the 11th Amendment immunity has been waived or abrogated. The plaintiff bears the burden on that issue, and that of course makes sense, but that's not our case here. Here we're talking about the application of the 11th Amendment in the first instance. Lastly, Your Honors, I just briefly would touch upon a couple of the other steadfast factors, one being the autonomy of Sheriff Gay. Again, Sheriff Gay has complete autonomy to operate law enforcement policies within Harvey County. There's no suggestion that the state is managing or otherwise interfering with that autonomy. So with regard to the conduct at issue here, which is policies regarding the use of force, Sheriff Gay is his own boss on that. There's no question about that. The state is not controlling that. And the last factor in steadfast is the question of whether the defendant's focus of concern is primarily local or state in nature. And here again, Sheriff Gay is a county sheriff. The authorizing statute authorizes him to enforce the peace in the county, in Harvey County. He is not authorized to pursue law enforcement activities outside of Harvey County. We cite cases from the state of Kansas, State v. Braybill, for example, that clearly articulates that a Kansas sheriff's jurisdiction ends at the border. And so Sheriff Gay is not concerned and has no jurisdiction east, west, north, or south of Harvey County. His concerns are solely with regard to Harvey County. Counsel, who sets the sheriff's salary? Who sets the sheriff's salary? Is that what you asked? Yes. The county commissioner, Your Honor. If there are no more questions, we would urge that the court affirm the decision below. Thank you. Thank you, Your Honor. I'd like to tie up a couple of points. Judge Matheson, you asked about the exclusivity of the steadfast factors. I think that this court in Colby v. Herrick, 2017 decision relied upon Sturdivant to create a fifth factor. And I think that was tying into Judge Kelly the funding mechanism as to whether or not the office of sheriff can levy taxes or issue bonds or raise revenue on their own. So I think that is a factor that would be relevant. The second thing is I would chafe a little bit at the notion that the 11th Amendment is anything other than a right of sovereignty to prevent litigants from hailing a sovereign into the federal court system. And so I think that's been recognized repeatedly by this court. Another point I would like to make is that Justice Rehnquist in McMillian v. Monroe County recognized that the fact that the state doesn't pay for the ultimate judgment, rather that the county is obligated to ensure so that the state doesn't have to, is not a factor that would suggest anything but a state actor. It's just an incidence of state government and how the state prerogatives have chosen to do it. Number three or four, I think, the federal knee-lander decision, I think there was a reference to the fact that that 11th Amendment discussion was pure dicta. To the contrary, 11th Amendment is jurisdictional, and there was an official capacity claim that it appears the district court did not resolve. And so this Tenth Circuit, as it is wont to do, raised it sua sponte and decided that it didn't have jurisdiction over the county attorney. So it's not dicta. It's in particular relevant to the holding to kick that case out. And I think that hits all of my points. If the court has any questions, I'd be happy to talk about them. But otherwise, thank you, Your Honor. Thank you for your arguments. The case is submitted. Counsel are excused. And the court will stand in recess until 830 in the morning. And I think we call you, Judge Mathison, here in a couple of minutes.